USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 5/10/2016

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DIANA HARDY AND MARK MCKOY,

　　　　　　　　Plaintiffs,

　　-against-

ROBERT BAIRD, JOHN RODEN, KELLI
MCVEA, PETER CIRIGLIANO, AND JOHN
DOE(S) #1-10,

　　　　　　　　Defendants.

No. 13-cv-7402 (NSR)

OPINION & ORDER

NELSON S. ROMÁN, United States District Judge

Plaintiffs Diana Hardy and Mark McKoy assert claims against Defendants for unlawful searches of Plaintiffs' persons and vehicle, false arrest, malicious prosecution, malicious abuse of process, failure to intervene, and conspiracy arising out of their arrests on February 28, 2012.

Before the Court is Defendants' motion for summary judgment. For the following reasons, Defendants' motion is GRANTED in part and DENIED in part.

## BACKGROUND

The following facts are undisputed, unless otherwise noted, and taken from the parties' summary judgment submissions and the Amended Complaint ("AC").

At all times relevant to the Amended Complaint, Defendants Roden, Baird, McVea, and Cirigliano were employed by the New York State Police, the former three Defendants as Troopers, and Cirigliano as an Investigator assigned to the Protective Services Unit. (Plaintiffs' Statement of Contested Facts Pursuant to Local Rule 56.1 ("Pls.' 56.1"), ¶¶ 1-4.) During the same time period, Plaintiff Diana Hardy was a 29 year-old Caucasian female; Plaintiff Mark McKoy was a 27 year-old African-American male. (AC ¶¶ 8-9.)

On February 28, 2012, Roden stopped Plaintiffs' vehicle while travelling on Route 17 in Chester, New York, for speeding and driving without a license plate lamp.  (AC ¶ 16; Pls.' 56.1 ¶¶ 5-6.)[1]  McKoy was driving, while Hardy was seated in the passenger seat.  (*Id.* ¶¶ 7, 12.) Roden asked McKoy for his license and registration, and after running a license check, learned that McKoy had two outstanding warrants for his arrest.  (*Id.* ¶ 9.)[2]  Roden then placed McKoy under arrest.  (*Id.* ¶ 10.)

Baird arrived on the scene at some point between the time McKoy was arrested and ten to fifteen minutes following the arrest.  (*Id.* ¶ 11.)  Baird approached the passenger side of Plaintiffs' vehicle to speak with Hardy, who was still seated inside.  (*Id.* ¶ 12.)  Plaintiffs "highly contest[]" what occurred next.  (*Id.* ¶ 13.)  Baird asserts that he asked Hardy to step out of the vehicle so that he could question her about whether she was carrying anything illegal on her person or in the vehicle.  (*Id.*)  Plaintiffs assert the following occurred: Baird asked Hardy for identification, and while she was retrieving it from her purse, Baird "sunk" his hand into the purse and pulled out a prescription pill bottle with the label worn three-quarters off, but which still showed the name of the pharmacy and the date on which the prescription was filled; Baird then asked Hardy what was in the bottle, to which she replied that it held prescribed sleeping pills and muscle relaxers; finally, Baird performed two or three "invasive and sexualized 'pat searches'" of Hardy.  (*Id.*)  Plaintiffs then assert that Hardy was placed in Roden's vehicle, next to McKoy, but was not handcuffed or explicitly placed under arrest.  (*Id.*)

---

[1] Although Plaintiffs only admit paragraph six "in part," Plaintiffs do not offer any evidence to specifically controvert Defendants' statement that McKoy was speeding or that his vehicle's license plate lamp was out.

[2] Again, although Plaintiffs only admit paragraph nine "in part," Plaintiffs do not offer any evidence to specifically controvert Defendants' statement that Roden learned that McKoy had two outstanding warrants for his arrest.

At this point, Baird and Roden each searched Plaintiffs' vehicle, during which they recovered a funnel, gauze pads, personal lubricant, an open package of balloons, muscle relaxers, sleeping pills, and at least one pill bottle with the label worn off.  (*Id.* ¶¶ 15-16.)  Plaintiffs admit that these items were found in the van or at the scene, but dispute the location and context in which they were found.  (*Id.*)  Following the search, Plaintiffs were transported back to the New York State Police's Monroe, New York barracks.  (*Id.* ¶¶ 17-18.)

At the barracks, Roden and Baird performed a strip search of McKoy, during which they recovered two or three bags of marijuana from McKoy's sock.  (Pls.' 56.1 ¶¶ 20, 23; Declaration of Robert Baird ("Baird Decl."), Docket No. 46, ¶ 11; Defs.' Mot. at 12.)

Cirigliano arrived at the Monroe barracks at some point after the Plaintiffs, though he was not present for McKoy's strip search.  (Pls.' 56.1 ¶¶ 21, 28[3].)  The parties dispute whether Cirigliano stopped at the Monroe barracks to complete some administrative work unrelated to the Plaintiffs' arrests, or whether he was contacted by Baird to assist in the investigation.  (*Id.* ¶¶ 28-30.)

McVea was stationed at the Montgomery, New York barracks and was asked to come to Monroe to conduct a strip search of Hardy.  (*Id.* ¶ 24.)  She was purportedly the only female Trooper on duty and available to conduct the search that evening.  (*Id.* ¶ 25.)  Upon arriving at the Monroe barracks, McVea conducted a strip search of Hardy, and reported to Roden and Cirigliano that she observed an excessive amount of lubricant on Hardy's vaginal area and in her pants.  (*Id.* ¶ 28; Declaration of Kelli McVea ("McVea Decl."), Docket No. 44, ¶ 6.)  Plaintiffs

---

[3] Although this statement is contained in paragraph 28 of Plaintiffs' 56.1 statement, it appears that Plaintiffs forgot to number this statement as a separate paragraph, which corresponds to paragraph 29 of Defendants' 56.1 statement.

dispute this account, arguing that McVea's statements and/or the related evidence was fabricated and that Hardy did not have lubricant on her pants or body that night.  (*Id.*)

Following the purported discovery of lubricant on Hardy's vaginal area and pants, and in light of the items recovered during the search of Plaintiffs' vehicle, Baird contacted the Orange County District Attorney's Office to apply for a warrant to search Hardy's body cavities.  (*Id.* ¶ 31.)  For roughly the next two hours, Baird spoke with Assistant District Attorney Andrew Kass as they worked on Baird's affidavit in support of the search warrant application.  (*Id.* ¶ 32.)  After completing the warrant application, it was signed by Town Justice Joseph Ranni.  (*Id.* ¶ 34.)  Roden and McVea then accompanied Hardy to the Orange Regional Medical Center, where a doctor performed a vaginal and rectal exam, as well as x-rays of Hardy's abdominal area, all of which were authorized by the warrant.  (*Id.* ¶¶ 35-38.)  No drugs were found.  (*Id.* ¶ 38.)

Upon returning to the Monroe barracks, Plaintiffs were issued desk appearance tickets – Hardy for criminal possession of a controlled substance in the seventh degree and McKoy for possession of marijuana, speeding, and failing to have proper lighting on his license plate.  (*Id.* ¶¶ 38-40.)

## STANDARD ON A MOTION FOR SUMMARY JUDGMENT

Rule 56 of the Federal Rules of Civil Procedure provides: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The moving party bears the initial burden of pointing to evidence in the record, "including depositions, documents [and] affidavits or declarations," *id.* at 56(c)(1)(A), "which it believes demonstrate[s] the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The moving party may also support an assertion that there is no genuine dispute by

4

"showing . . . that [the] adverse party cannot produce admissible evidence to support the fact."

Fed. R. Civ. P. 56(c)(1)(B).  If the moving party fulfills its preliminary burden, the onus shifts to

the non-moving party to identify "specific facts showing that there is a genuine issue for trial."

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (internal citation and quotation marks

omitted).  A genuine dispute of material fact exists when "the evidence is such that a reasonable

jury could return a verdict for the nonmoving party."  *Id.* at 248; *accord Benn v. Kissane*, 510 F.

App'x 34, 36 (2d Cir. 2013) (summary order).  Courts must "constru[e] the evidence in the light

most favorable to the non-moving party and draw[ ] all reasonable inferences in its favor."

*Fincher v. Depository Trust & Clearing Corp.*, 604 F.3d 712, 720 (2d Cir. 2010) (internal

quotation marks omitted).  In reviewing the record, "the judge's function is not himself to weigh

the evidence and determine the truth of the matter," nor is it to determine a witness's credibility.

*Anderson*, 477 U.S. at 249.  Rather, "[t]he inquiry performed is the threshold inquiry of

determining whether there is the need for a trial."  *Id.* at 250.

Summary judgment should be granted when a party "fails to make a showing sufficient to

establish the existence of an element essential to that party's case, and on which that party will

bear the burden of proof at trial."  *Celotex*, 477 U.S. at 322.  The party asserting that a fact is

genuinely disputed must support their assertion by "citing to particular parts of materials in the

record" or "showing that the materials cited do not establish the absence . . . of a genuine

dispute."  Fed. R. Civ. P. 56(c)(1).  "Statements that are devoid of any specifics, but replete with

conclusions, are insufficient to defeat a properly supported motion for summary judgment."

*Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 452 (2d Cir. 1999).  The nonmoving party "may not

rely on conclusory allegations or unsubstantiated speculation."  *FDIC v. Great Am. Ins. Co.*, 607

F.3d 288, 292 (2d Cir. 2010) (internal citation and quotation marks omitted).  Moreover, "[a non-

moving party's] self-serving statement, without direct or circumstantial evidence to support the charge, is insufficient to defeat a motion for summary judgment." *Fincher v. Depository Trust & Clearing Corp.*, No. 06 Cv. 9959 (WHP), 2008 WL 4308126, at *3 (S.D.N.Y. Sept. 17, 2008) *aff'd*, 604 F.3d 712 (2d Cir. 2010) (citing *Gonzales v. Beth Israel Med. Ctr.*, 262 F. Supp. 2d 342, 353 (S.D.N.Y. 2003)).

## DISCUSSION

### I.     Searches of Plaintiffs' Persons

Plaintiffs' first cause of action alleges claims under the Fourth and Fourteenth Amendments arising out of purportedly illegal and improper bodily searches of Plaintiffs, including: "a strip search or visual cavity search of Plaintiff Mark McKoy," (AC ¶ 183); "compelling Mr. McKoy to defecate in [Defendants'] presence and examining his feces," (*id.*); "two 'pat downs' of Ms. Hardy [that] were improperly performed," (*Id.* ¶ 184); "a strip search or visual cavity search of Diana Hardy," (*id.*); "compelling Ms. Hardy to urinate or defecate in [Defendants'] presence," (*id.*); and that "Defendants had no probable cause to justify a cavity search of Ms. Hardy," (*id.*).  Defendants move for summary judgment on the strip and cavity searches, but do not appear to seek summary judgment on the portions of Plaintiffs' claims arising out of Defendants' pat downs of Hardy or their purported forcing of Plaintiffs to urinate and/or defecate in their presence.  The Court therefore focuses solely on the strip and cavity searches carried out by Defendants.

The manual cavity search of Hardy at the hospital was conducted pursuant to a search warrant.  "Ordinarily, an arrest or search pursuant to a warrant issued by a neutral magistrate is presumed reasonable because such warrants may issue only upon a showing of probable cause." *Fabrikant v. French*, 691 F.3d 193, 214 (2d Cir. 2012) (quoting *Walczyk v. Rio*, 496 F.3d 139, 155-56 (2d Cir. 2007)) (internal quotation marks omitted).  "A plaintiff who argues that a

warrant was issued on less than probable cause faces a heavy burden." *Id.* (quoting *Rivera v. United States*, 928 F.2d 592, 602 (2d Cir. 1991)) (internal quotation marks omitted). "In a civil rights action, to challenge the probable cause for a search warrant, 'the plaintiff must make a substantial preliminary showing that the affiant knowingly and intentionally, or with reckless disregard for the truth, made a false statement in his affidavit and that the allegedly false statement was necessary to the finding of probable cause.'" *Id.* (quoting *Golino v. City of New Haven*, 950 F.2d 864, 870 (2d Cir. 1991)).

 The remainder of the allegedly improper searches were conducted without a warrant. Although warrantless strip and cavity searches are routinely permitted incident to a lawful arrest under the Fourth Amendment, *see Fate v. Charles*, 24 F. Supp. 3d 337, 344-46 (S.D.N.Y. 2014), officers must have "an individualized 'reasonable suspicion that [a misdemeanor][4] arrestee is concealing weapons or other contraband based on the crime charged, the particular characteristics of the arrestee, and/or the circumstances of the arrest.'" *Hartline v. Gallo*, 546 F.3d 95, 100 (2d Cir. 2008) (quoting *Weber v. Dell,* 804 F.2d 796, 802 (2d Cir. 1986)) (alterations in original). "A 'reasonable suspicion' of wrongdoing is something stronger than a mere 'hunch,' but something weaker than probable cause." *Varrone v. Bilotti*, 123 F.3d 75, 79 (2d Cir. 1997) (quoting *Wood v. Clemons,* 89 F.3d 922, 929 (1st Cir. 1996)). "To establish reasonable suspicion, [officers] must point to specific objective facts and rational inferences that they are entitled to draw from those facts in light of their experience." *Id.* (internal citation and quotation marks omitted).

 The Court analyzes the searches of each Plaintiff in turn.

---

[4] The crimes for which Plaintiffs were arrested and ultimately charged are misdemeanors and/or violations under New York law.

A.      *McKoy*

It is undisputed that Roden "stopped [P]laintiffs' vehicle for speeding and driving without a license plate lamp." (Pls.' 56.1 ¶ 6.)  After checking McKoy's license and "learn[ing] that he had two outstanding warrants for his arrest," McKoy was placed under arrest. (*Id.* ¶¶ 9-10.) Upon being transferred back to the Monroe barracks, Roden and Baird performed a simultaneous strip and visual cavity search of McKoy, during which they recovered two or three bags of marijuana from McKoy's sock. (Pls.' 56.1 ¶¶ 20, 23; Baird Decl. ¶ 11; Defs.' Mot. at 12.)

Defendants justify the strip and cavity search by pointing to: the funnel, personal lubricant, and balloons found in McKoy's vehicle incident to his arrest; his denial of the presence of the balloons in the vehicle; the muscle relaxers, sleeping pills, and prescription pill bottle without a label recovered at the scene; his lack of luggage for an overnight trip; and his prior drug related arrests. (Defs.' Mot. at 13.)  With the exception of McKoy's prior arrests, which are substantiated by a copy of his criminal history information, (Declaration of John Roden ("Roden Decl."), Docket No. 43, Ex. A), the remainder of the supporting evidence is derived from the Declarations of Roden and Baird, which rely solely on their own recollections of the events in question. (Defs.' Mot. at 13.)

Conversely, Plaintiffs argue that Defendants' justifications are either insufficient to justify the search or rely on facts in dispute.  The Court agrees.  McKoy's prior drug-related arrests were from 2004 and 2007, the latter of which was roughly four and one-half years prior to the incident at issue.  The Court simply cannot see how this alone would provide a reasonable suspicion that McKoy was secreting drugs on his person.  Nor can the Court combine McKoy's prior arrests with the evidence found at the scene to justify the search.  All of the purported justifications are based on facts in dispute.  Plaintiffs assert that: the funnel, personal lubricant, and balloons were not found together in a bag, but were stored in different places in the vehicle,

8

and are therefore not indicative of drug smuggling, (Pls.' Opp. at 27-29); McKoy did not "deny"

the presence of the balloons in the vehicle, but instead claimed he did not know what Roden was

talking about, (*id.*); the muscle relaxers, sleeping pills, and prescription pill bottle without a label

were purportedly taken from Hardy's purse, not found loose in the vehicle or in McKoy's

possession, (Pls.' 56.1 ¶ 13); and McKoy was travelling with a book bag containing personal

items, including a toothbrush and underwear, and did not intend to stay with Hardy for an

extended period of time, thus providing him with adequate luggage for the trip.  (Pls.' Opp. at

29.)  Most importantly, Roden testified that he did not believe that McKoy was secreting drugs in

his body.  (Pls.' Opp., Ex. D. at 142:20-143:2.)

Taken individually or together, and when viewed in the light most favorable to Plaintiffs,

there are simply too many facts in dispute for this Court to conclude as a matter of law that

Defendants had reasonable suspicion to believe McKoy was secreting contraband, thus

permitting a strip and cavity search.

Defendants ask the Court to apply certain of the factors announced in *United States v.*

*Asbury*, 586 F.2d 973, 976 (2d Cir. 1978), in determining whether Defendants had reasonable

suspicion to search McKoy.  In *Hartline v. Gallo*, 546 F.3d 95 (2d Cir. 2008), however, the

Second Circuit expressed some skepticism about applying the *Asbury* factors – which involved a

border search – to searches incident to arrest.  *Id.* at 101 ("Defendants point not to our holding in

*Asbury*—which involves a border search, rather than a search incident to arrest . . . .").  Even

applying the factors identified by Defendants as purportedly applicable – "'[a]n itinerary

suggestive of wrongdoing. . . [d]iscovery of incriminating matter during routine searches. . .

[i]nformation derived from the search or conduct of a traveling companion. . . [i]nadequate

luggage' and '[e]vasive or contradictory answers,'" – the facts underlying these arguments, as

discussed above, are genuinely in dispute and cannot be resolved on the instant motion.  Thus, on

these facts, *Asbury* does not resolve the issues raised in the instant motion.

Defendants also advance the argument that the odor of marijuana emanating from

Plaintiffs' vehicle justified their strip and cavity searches.  (Defs.' Reply at 8.)  Even assuming

such an odor existed, this argument is unavailing.  In *Hartline*, the Second Circuit was faced with

a similar factual scenario in which an officer saw a stem of marijuana plant on the floor of the

plaintiff's truck and ultimately recovered the butt of a marijuana cigarette, a container with a few

seeds, and a pipe.  Despite the recovery of such evidence, the Second Circuit found the strip

search of the plaintiff was not justified by reasonable suspicion that she was secreting contraband

on her person.  *Hartline*, 546 F.3d at 102.  If, on its own, the actual recovery of marijuana from a

vehicle is not sufficient to justify a strip search, the mere odor of marijuana, without more,

cannot rise to the level of reasonable suspicion needed to justify such an invasive search.

Accordingly, Defendants' motion for summary judgment on the strip and cavity searches

of McKoy is denied.[5]

B.      *Hardy*

Defendants justify McVea's strip and visual cavity search of Hardy by citing to the same

evidence, and making the same arguments, used to support their search of McKoy.  (Defs.' Mot.

at 13.)  Those arguments rely on the same set of disputed facts and are equally unavailing as

applied to Hardy.  Nor does the recovery of marijuana from McKoy prior to the search of Hardy,

(*see* McVea Decl. ¶ 5), provide sufficient evidence to justify the search of Hardy as a matter of

---

[5] Defendants McVea and Cirigliano were not present during the search of McKoy.  (Pls.' 56.1 ¶ 21.)
Because they were not personally involved in the search, Plaintiffs' claim against them is dismissed.  *Wright v.
Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (plaintiff must allege personal involvement of a defendant to establish a
claim under § 1983); *accord Costello v. City of Burlington*, 632 F.3d 41, 49 (2d Cir. 2011) (same).

law.  Although recovery of contraband from one occupant of a vehicle may, in certain circumstances, permit the strip search of a passenger in the same vehicle, *see Elk v. Townson*, 839 F. Supp. 1047, 1052 (S.D.N.Y. 1993) (permitting a strip search of a passenger where vehicle smelled strongly of marijuana and in which marijuana was found both on another occupant and in a container located near the passenger), the facts of this case do not permit such a search. Here, the marijuana was recovered from McKoy's sock, outside of Hardy's reach.  Moreover, the marijuana was not secreted inside McKoy's body cavities, which would have lent some credence to Defendants' theory that Plaintiffs were secreting drugs.  Simply put, on the facts presented, the Court cannot conclude that finding marijuana on McKoy provided Defendants with an individualized suspicion that Hardy was secreting marijuana or other contraband on her person.

Turning to the cavity search of Hardy conducted at the hospital, Defendants argue that it was conducted pursuant to a valid search warrant, shifting the burden to Plaintiffs to show that the warrant was not based on probable cause.  Plaintiffs contend that the warrant was issued based on facts in dispute – specifically whether Hardy had lubricant on her body and corresponding areas of her pants.  Plaintiffs also argue that Baird grossly misled the magistrate when detailing his training and experience in support of the warrant application.

Justice Ranni made clear in deposition testimony in this matter that he would not have signed the warrant if Hardy's pants were dry.  (Pls.' Opp., Ex. N at 56:13-17.)  Although the warrant application avers "that the crotch area of [Hardy's] sweatpants was soiled with what appeared to be some sort of lubricant that appeared to be leaking from Hardy's vaginal area or anus," (Baird Decl., Ex. A, at 2-3), the only evidence supporting this allegation comes from the other Defendants' recollections of McVea's statements following her search, as well as McVea's own declaration made in connection with this matter.  (*See*, *e.g.*, Baird Decl. ¶ 14; McVea Decl.

¶ 6.)  Hardy, however, disputes ever having lubricant or fluid leaking from her vaginal or anal area that evening.  (Pls.' Opp., Ex. A at 73:19-74:1.)  Moreover, though Baird stated in the warrant application that "[t]here was a noticeable stain on the inside and on the outside thigh area of the pants," (*id.* at 3), he could not clearly recall during his deposition in this matter whether he ever observed a stain on the outside of Hardy's pants.  (Pls.' Opp., Ex. A at 112:2-114:12.)  Defendants did not submit, and apparently do not have, photographs of Hardy's pants or crotch, or the actual pants, (*see* Pls.' Opp., Ex. H at 114:6-14), to support their contention that they were soiled with lubricant.  What is left for the Court to consider, therefore, is the conflicting testimony of Defendants and Hardy, to determine whether Baird knowingly and intentionally, or with reckless disregard for the truth, made a false statement in his warrant application with respect to the presence of lubricant on Hardy's body and/or pants.  On a motion for summary judgment, the Court cannot credit the testimony of one party, while disregarding the testimony of another.  This issue is therefore properly left for the jury.

Accordingly, Defendants are likewise not entitled to summary judgment on the strip and cavity searches of Hardy.[6]

## II.   Vehicle Search

"[S]earches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment – subject only to a few specifically established and well-delineated exceptions."  *Katz v. United States*, 389 U.S. 347, 357 (1967).  Acknowledging that they did not have a warrant to search Plaintiffs' vehicle,

---

[6] Defendants Roden, Baird, and Cirigliano were not in the bathroom when McVea searched Hardy.  (Pls.' 56.1 ¶ 27.)  Because they were not personally involved in the search, Plaintiffs' claim against them is dismissed.  *Wright*, 21 F.3d at 501; *accord Costello*, 632 F.3d at 49.

Defendants argue that their search was valid under a number of exceptions to the warrant requirement.  The Court will discuss each proffered justification in turn.

A.      *Search Incident to Arrest*

Relying on *New York v. Belton*, 453 U.S. 454, 460 (1981), Defendants argue that "when a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile." Although this bright line rule may have been the law prior to 2009, in *Arizona v. Gant*, 556 U.S. 332 (2009), the Supreme Court abrogated *Belton* and "adopted a new, two-part rule under which an automobile search incident to a recent occupant's arrest is constitutional (1) if the arrestee is within reaching distance of the vehicle during the search, or (2) if the police have reason to believe that the vehicle contains 'evidence relevant to the crime of arrest.'" *Davis v. United States*, 564 U.S. 229, 234-35 (2011) (recognizing the abrogation of *Belton*).  Because Defendants applied the incorrect rule for a search incident to arrest, they only offered evidence of McKoy's arrest as justification for the search, not evidence that McKoy or Hardy were within reach of the vehicle during the search[7] or that the Defendants believed the vehicle contained evidence relevant to the crime for which McKoy was arrested.[8]  (*See* Defs.' Mot. at 8-10.)  Without more, Defendants are not entitled to summary judgment on this issue.  Rather than attempting to cure this deficiency on reply, after it was noted by Plaintiffs, Defendants seemingly abandoned this argument, turning instead to the automobile exception to the Fourth Amendment as a justification for the search.

---

[7] Defendants note that an officer is permitted "to search a vehicle's passenger compartment when he has reasonable suspicion that an individual, whether or not the arrestee, is 'dangerous' and might access the vehicle to 'gain immediate control of weapons.'" *Arizona v. Gant*, 556 U.S. 332, 346-47 (2009) (internal citations omitted). Nevertheless, Defendants proffered no evidence that they held a reasonable suspicion that McKoy or Hardy were dangerous and might seek to retrieve weapons from the vehicle.

[8] Defendants concede that Hardy was not under arrest at the time the vehicle was searched.  (*See* Baird Decl. ¶¶ 6, 10.)  Thus, her arrest cannot serve as the basis for the vehicle search.

     *B.     Automobile Exception*

The "automobile exception" to the Fourth Amendment "permits law enforcement to

conduct a warrantless search of a readily mobile vehicle where there is probable cause to believe

that the vehicle contains contraband."  *United States v. Navas*, 597 F.3d 492, 497 (2d Cir. 2010).

"Where the probable cause upon which the search is based 'extends to the entire vehicle' the

permissible scope of a search pursuant to this exception includes 'every part of the vehicle and

its contents [including all containers and packages] that may conceal the object of the search.'"

*Id.* (internal citations omitted).  Consistent with the automobile exception, it is well settled that

the odor of marijuana provides probable cause to search the entirety of a vehicle, including its

contents.  *United States v. James*, No. 10 CR 1293 RPP, 2011 WL 6306721, at *6 (S.D.N.Y.

Dec. 16, 2011), *aff'd*, 520 F. App'x 41 (2d Cir. 2013) (collecting cases); *United States v. Colon*,

No. 10 CR. 498 RPP, 2011 WL 569874, at *12 (S.D.N.Y. Feb. 8, 2011); *United States v.

Mitchell*, No. 11-CR-6019, 2012 WL 6827387, at *7 (W.D.N.Y. Nov. 27, 2012), *report and

recommendation adopted*, No. 11-CR-6019L, 2013 WL 132459 (W.D.N.Y. Jan. 9, 2013)

(collecting cases).

     On reply, Defendants argue that the odor of marijuana provided probable cause to search

Plaintiffs' vehicle.  In support of this contention, Defendants cite to deposition testimony of

Roden and Baird stating that McKoy and his vehicle smelled like marijuana, (Declaration of Jeb

Harben ("Harben Decl."), Docket No. 53, Ex. B at 26-27, Ex. C at 63-64), as well as incident

reports written in the early morning hours following McKoy's arrest.  (Reply Affirmation of

John Roden ("Roden Aff."), Docket No. 54, ¶¶ 2-3, Ex. A ("I noticed an odor of marijuana and a

level 2 probable cause search was conducted."), Ex. B ("LEVEL 2 PROBABLE CAUSE

SEARCH BASED ON ODOR OF MARIJUANA.")).  Plaintiffs counter with a number of

arguments, including that: (1) Baird's warrant application did not mention the odor of marijuana,

but noted that Plaintiffs consented to a search of their vehicle; (2) Assistant District Attorney

Kass, who drafted the warrant application, did not recall Baird mentioning the odor; (3) the

incident reports were not generated "contemporaneously" with the search, but were written after

the incident and after marijuana was discovered in McKoy's sock; and (4) McKoy testified that

he never smoked in the vehicle. (Pls.' Sur-Reply at 2-4.)

      Missing from Plaintiffs' arguments is any evidence creating a dispute of material fact as

to whether Plaintiffs' vehicle did not smell like marijuana when the officers arrested McKoy.

Although McKoy testified that he never smoked in the vehicle, he did not state that neither he

nor the vehicle smelled like marijuana. The fact that McKoy did not smoke in the vehicle would

not preclude the officers from smelling marijuana, which could have been emanating from his

person or clothes. Plaintiffs' arguments with regard to the warrant application fare no better.

The fact that the application failed to mention the odor of marijuana or that Plaintiffs consented

to the search is not inconsistent with the vehicle smelling of marijuana, and thus does not create a

material issue of fact requiring a trial. Finally, Plaintiffs contend that the marijuana odor

justification for the vehicle search was an attempt by Defendants, during an internal investigation

into the incident over one year later, to "backfill" their narrative to justify the purportedly

unlawful search. (*See* Pls.' Opp. at 14-16.) But even a cursory review of the record shows that

the incident reports reflecting the marijuana odor were prepared in the early morning hours after

Plaintiffs' arrests, a fact that Plaintiffs do not appear to contest. (*See* Pls.' Sur-Reply at 2-3.)

      Without any evidence creating an issue of material fact with respect to the presence of the

marijuana odor, the Court finds that Roden and Baird had probable cause to believe that the

vehicle contained contraband, and their search was therefore permissible under the automobile exception to the Fourth Amendment.  Defendants are granted summary judgment on this claim.[9]

## III.    Malicious Abuse of Process

Plaintiffs' third cause of action alleges malicious abuse of process under § 1983 based on Defendants' purported intention to: (1) "punish the Plaintiffs for being in an interracial relationship" and for driving on Roden's "route"; (2) "humiliate and intimidate the Plaintiffs"; (3) "achieve sadistic and/or sexual gratification"; and (4) "punish the Plaintiffs for not aiding in the development of Defendants' 'drug mule' narrative."  (AC ¶ 198; Pls.' Opp. at 34-35.)  *See Cook v. Sheldon*, 41 F.3d 73, 80 (2d Cir. 1994) (permitting malicious abuse of process claims under § 1983).

"In New York, 'a malicious abuse-of-process claim lies against a defendant who (1) employs regularly issued legal process to compel performance or forbearance of some act (2) with intent to do harm without excuse of justification, and (3) in order to obtain a collateral objective that is outside the legitimate ends of the process.'"  *Savino v. City of New York*, 331 F.3d 63, 76-77 (2d Cir. 2003) (quoting *Cook*, 41 F.3d at 80).  Plaintiffs must show that "the defendants had an improper *purpose* in instigating the action."  *Savino*, 331 F.3d at 77 (citing *Dean v. Kochendorfer*, 237 N.Y. 384 (1924)) (emphasis in original).  "[A] malicious motive alone . . . does not give rise to a cause of action for abuse of process."  *Id.* (quoting *Curiano v. Suozzi*, 63 N.Y.2d 113, 117 (1984)).

---

[9] Defendants assert two additional justifications for their search, the first based on the presence of an unlabeled prescription pill bottle in open view, and the second based on a purported inventory search conducted of the vehicle, through which Defendants would have inevitably discovered the items seized in this matter.  Having accepted one of Defendants' proffered justifications for the search, the Court need not, and does not, reach the remaining arguments.

Simply put, "[t]he gist of abuse of process is the improper use of process *after* it is regularly issued." *Cook*, 41 F.3d at 80 (internal citation and quotation marks omitted) (emphasis added). "Accordingly, to succeed on an abuse of process claim, a plaintiff must not only show a collateral objective, but must show that that objective was pursued after legal process was issued." *Slater v. Mackey*, No. 12-CV-04325 NGG RML, 2015 WL 6971793, at *10 (E.D.N.Y. Nov. 10, 2015) (citing *Richardson v. N.Y.C. Health & Hosps. Corp.*, No. 05–CV–6278 (RJS), 2009 WL 804096, at * 16–17 (S.D.N.Y. Mar. 25, 2009)).

It is undisputed that McKoy was stopped by Roden for speeding and driving without a license plate lamp. (Pls.' 56.1 ¶¶ 6-7.) It is also undisputed that McKoy was arrested based on two outstanding warrants. (Pls.' 56.1 ¶¶ 9-10.) Likewise, Hardy admits that she was in possession of an unmarked prescription pill bottle that contained a controlled substance. (Pls.' Opp., Ex. A at 14:17-19; Pls.' 56.1 ¶ 16.) Plaintiffs were issued desk appearance tickets for these violations and/or misdemeanors; McKoy was also issued a ticket for possession of marijuana, which was found on his person. (Pls.' 56.1 ¶¶ 23, 39, 40.)

Even accepting Plaintiffs' contentions that Defendants sought to issue them tickets solely for racist or sadistic purposes, which appears to be a stretch based on the record before the Court, Plaintiffs do not assert that Defendants pursued any improper collateral objective *after* the tickets were issued. Without such evidence, Plaintiffs' claim must fail. *Slater*, 2015 WL 6971793, at *18. Accordingly, Defendants are granted summary judgment on Plaintiffs' abuse of process claim.

## IV.   False Arrest

Plaintiffs' fourth cause of action alleges false arrest only with respect to Hardy. To succeed on a false arrest claim, Plaintiffs must demonstrate that: "(1) the defendant intended to confine [the plaintiff], (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not

17

consent to the confinement and (4) the confinement was not otherwise privileged." *Jocks v. Tavernier*, 316 F.3d 128, 134-35 (2d Cir. 2003) (internal quotation marks and citation omitted). The existence of probable cause provides a complete defense to false arrest claims. *See Covington v. City of New York*, 171 F.3d 117, 122 (2d Cir. 1999).

The law is clear that establishing probable cause does not require one to meet a particularly demanding standard. *United States v. Solomonyan*, 452 F. Supp. 2d 334, 343 (S.D.N.Y. 2006).  By definition, only the "probability" of criminal conduct must be shown – certainty is not required. *Illinois v. Gates,* 462 U.S. 213, 231 (1983).  Probable cause requires an officer to have "knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested." *Martinez v. Simonetti*, 202 F.3d 625, 634 (2d Cir. 2000) (internal quotation marks omitted).  "Whether probable cause exists depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest." *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004); *accord Ricciuti v. New York City Transit Authority*, 124 F.3d 123, 128 (2d Cir. 1997).

Defendants assert that "[t]he evidence shows that Hardy was arrested only after it was clear she was in possession of prescription pills in an unmarked prescription pill bottle."  (Defs.' Mot. at 16.)  Plaintiffs do not appear to dispute that Hardy was in possession of prescription pills in an unmarked prescription pill bottle, but question whether Hardy was effectively under arrest prior to the recovery of the pills, giving rise to a claim for false arrest.  (Pls.' Opp. at 31.)

As previously noted, on a motion for summary judgment, the Court is required to "constru[e] the evidence in the light most favorable to the non-moving party and draw[] all reasonable inferences in its favor." *Fincher*, 604 F.3d at 720.  "Assessments of credibility and

choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment." *Rule v. Brine, Inc.*, 85 F.3d 1002, 1011 (2d Cir. 1996). Here, the Court is faced with two conflicting versions of the events surrounding Hardy's arrest. Nevertheless, under either version, Plaintiffs' false arrest claim fails.

Under Hardy's version of events, Baird seized the prescription pill bottle from her purse prior to her being asked to step out of the vehicle, and prior to any frisk of her person. (Pls.' Opp., Ex. A at 14:14-21, 20:18-20.) After seizing the pill bottle, which did not have a complete label on it, Hardy testified that she told Baird it contained sleeping pills and muscle relaxers. (*Id.* at 21:3-11.) At this point, Baird had probable cause to arrest Hardy based on the belief that she was in possession "of controlled substances . . . outside of the original container in which it was dispensed." N.Y. Pub. Health Law § 3345[10]; *see Cortes v. City of New York*, No. 15 CIV. 1718 (BMC), 2015 WL 7776906, at *3 (E.D.N.Y. Dec. 2, 2015) (finding that officer had probable cause to arrest where plaintiff was carrying prescription medication in a photographic film canister in a box next to the original prescription bottle that contained more of the same medication, as such conduct was a literal violation of the statute); *Deanda v. Hicks*, No. 13-CV-1203 KMK, 2015 WL 5730345, at *19-23 (S.D.N.Y. Sept. 30, 2015) (finding probable cause to arrest during traffic stop when officer saw an unmarked transparent bottle containing pills that he recognized as oxycodone in plaintiff's bag and plaintiff did not have a prescription present for the pills).

Under Defendants' version of events, which Plaintiffs, paradoxically, seek to credit in order to sustain Hardy's false arrest claim, (*see* Pls.' Opp. at 31), Roden and Baird recovered the

---

[10] N.Y. Pub. Health Law § 3345 reads as follows: "Except for the purpose of current use by the person or animal for whom such substance was prescribed or dispensed, it shall be unlawful for an ultimate user of controlled substances to possess such substance outside of the original container in which it was dispensed."

pill bottle and pills during their searches of Plaintiffs' vehicle, after asking Hardy to step out of the vehicle and frisking her.  (Defs.' 56.1 ¶¶ 13-16.)  Thus, Plaintiffs posit that there is a question of fact for the jury as to whether Hardy was under arrest prior to the search of the vehicle, before the pills were recovered.  Hardy's own testimony, however, is contradictory, as she explicitly stated that when she was driven to the Monroe barracks after the search of the vehicle, she was not under arrest.  (Pls.' Opp., Ex. A at 16:12-16 ("And so, you know, they took me first to the police station.  They pulled away with me first and when we got down - - I was not handcuffed. Not once.  I wasn't under arrest.").)  It was not until they arrived at the barracks that Hardy was placed under arrest and handcuffed.  (*Id.* at 16:17-19.)  This is corroborated by Baird, who stated that Hardy was not placed under arrest when the pills were found, but only upon returning to the Monroe barracks.  (Baird Decl. ¶¶ 6, 9-10.)  By this time, Baird had contacted poison control to confirm the identities of the pills and had learned that they were controlled substances.  (*Id.* ¶ 9.) Thus, even crediting Defendants' testimony with respect to when the pills were found, Hardy did not believe she was under arrest until long after Roden and Baird purportedly found the pill bottle and pills, making Plaintiffs' argument with respect to false arrest particularly unpersuasive.

Under either version of events, Defendants had probable cause to arrest Hardy for violating N.Y. Pub. Health Law § 3345.  Accordingly, Defendants are granted summary judgment on Plaintiffs' false arrest claim.

## V.     Malicious Prosecution

Plaintiffs' next cause of action alleges malicious prosecution of Hardy by Defendants. "In order to prevail on a § 1983 claim against a state actor for malicious prosecution, a plaintiff must show a violation of [her] rights under the Fourth Amendment, and must establish the elements of a malicious prosecution claim under state law."  *Manganiello v. City of New York*,

20

612 F.3d 149, 160-61 (2d Cir. 2010) (internal citations omitted).  "To establish a malicious prosecution claim under New York law, a plaintiff must prove "(1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions."  *Id.* (internal citations omitted).

As with a false arrest claim, "'the existence of probable cause is a complete defense to a claim of malicious prosecution.'"  *Stansbury v. Wertman*, 721 F.3d 84, 95 (2d Cir. 2013) (quoting *Savino v. City of New York*, 331 F.3d 63, 72 (2d Cir. 2003)).  The probable cause standard applied to a malicious prosecution claim is "slightly higher than the standard for false arrest cases" and requires "such facts and circumstances as would lead a reasonably prudent person to believe the plaintiff guilty."  *Id.* at 95.  When a court determines that there was probable cause at the time of the arrest, there can be no claim for malicious prosecution "in the absence of some indication that the authorities became aware of exculpatory evidence between the time of the arrest and the subsequent prosecution that would undermine the probable cause which supported the arrest."  *Johnson v. City of Mount Vernon*, No. 10–CV–70006, 2012 WL 4466618, at *5 (S.D.N.Y. Sept. 18, 2012) (*citing Rodriguez v. City of New York*, No. 08–CV– 04173, 2012 WL 1059415, at *11 (E.D.N.Y. Mar. 28, 2012)).

Having already determined that Hardy was arrested based on probable cause to believe she violated N.Y. Pub. Health Law § 3345, the Court turns to whether any exculpatory evidence came to light between the time of her arrest and subsequent prosecution.  Following a thorough review of the record, the Court concludes that no such evidence did.

Plaintiffs also contend that the purportedly improper search of Hardy's purse would result in suppression of the pills as a result of the fruit of the poisonous tree doctrine, defeating any

reasonable belief that a criminal proceeding brought against her could succeed.  Assuming its

applicability, the fruit of the poisonous tree doctrine may have barred the use of the pills as part

of Hardy's criminal prosecution, but the doctrine "is inapplicable to civil actions arising under §

1983, and courts need not ignore evidence recovered as the result of an unlawful search when

evaluating claims for damages."  *Allen v. Antal*, No. 12 CIV. 8024 NSR, 2014 WL 2526977, at

*18 (S.D.N.Y. Mar. 13, 2014), *reconsideration denied*, No. 12 CIV. 8024 NSR, 2014 WL

2526913 (S.D.N.Y. June 3, 2014) (NSR) (collecting cases).  Thus, the doctrine has no effect on

this claim or action.

In light of the probable cause to arrest and prosecute Hardy for violating N.Y. Pub.

Health Law § 3345, Defendants are entitled to summary judgment on Plaintiffs' malicious

prosecution claim.

## VI.      Failure to Intervene

"[A]ll law enforcement officials have an affirmative duty to intervene to protect the

constitutional rights of citizens from infringement by other law enforcement officers in their

presence."  *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994).  Liability may attach where an

officer fails to intervene, but observes or has reason to know: (1) that excessive force is being

used; (2) that a citizen has been unjustifiably arrested; or (3) that any constitutional violation has

been committed by a law enforcement official.  *Id.*  For an officer to be held liable, he or she

must have had a realistic opportunity to intervene to prevent the violation from happening.  *Id.*

(citing *O'Neill v. Krzeminski*, 839 F.2d 9, 11-12 (2d Cir. 1988)); *accord Russo v. DeMilia*, 894 F.

Supp. 2d 391, 414 (S.D.N.Y. 2012).  However, "there can be no failure to intervene claim

without a primary constitutional violation."  *Forney v. Forney*, 96 F. Supp. 3d 7, 13 (E.D.N.Y.

2015) (citing *Posner v. City of New York*, 11-CV-4859, 2014 WL 185880, at *8 (S.D.N.Y. Jan.

16, 2014)).  Ultimately, "[w]hether an officer had sufficient time to intercede or was capable of

preventing the harm being caused by another officer is an issue of fact for the jury unless, considering all the evidence, a reasonable jury could not possibly conclude otherwise." *Anderson*, 17 F.3d at 557.

"It is well settled in this Circuit that 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite for an award of damages under § 1983.'" *Provost v. City of Newburgh*, 262 F.3d 146, 154 (2d Cir. 2001) (quoting *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994)).  With respect to a claim of failure to intervene, an officer is personally involved in the alleged constitutional deprivation if he was present when it occurred, "yet failed to intercede on behalf of the victim even though he had a reasonable opportunity to do so." *Russo v. DeMilia*, 894 F. Supp. 2d 391, 414 (S.D.N.Y. 2012) (quoting *Jeffreys v. Rossi*, 275 F. Supp. 2d 463, 474 (S.D.N.Y. 2003)).  Where the officer is a direct participant in the allegedly unlawful conduct, the failure to intervene theory of liability is inapplicable.  *Simon v. City of New York*, No. 09 Cv. 1302 (ENV)(RER), 2011 WL 317975, at *12 (E.D.N.Y. Jan. 3, 2011) (dismissing plaintiff's claim as futile for failure to intervene "because these same officers actually arrested her.") (citing *Morgan v. County of Nassau*, No. 09 Cv. 4168 (ADS)(AKT), 2010 WL 2634125, at *9 (E.D.N.Y. July 1, 2010)) *report and recommendation adopted*, No. 09 Cv. 1302 (ENV)(RER), 2011 WL 344757 (E.D.N.Y. Feb. 1, 2011).

Without citing to specific examples, Plaintiffs generally allege that each of the Defendants failed to intervene to prevent the alleged violations of Plaintiffs' constitutional rights. (*See* AC ¶ 219.)  In opposition to the instant motion, Plaintiffs assert that: (1) Roden and Baird failed to intercede with respect to the other's wrongful vehicle search, (Pls.' Opp. at 22); (2) each of the Defendants failed to intercede with respect to the other's wrongful searches of McKoy's

23

and Hardy's persons, (*id.* at 30); and (3) Roden failed to intercede in Hardy's wrongful arrest,
(*id.* at 32).  The Court will discuss the relevant claims applicable to each Defendant in turn.

A.     *Trooper Roden*

Roden was directly involved in the search of Plaintiffs' vehicle, the strip and visual
cavity search of McKoy, and the request for McKoy to defecate in Roden's presence.  As Roden
was a direct participant in these purportedly unlawful actions, the failure to intervene theory of
liability is not applicable.  *Simon*, 2011 WL 317975, at *12.  Although Roden and Baird
purportedly searched Plaintiffs' vehicle successively, rather than together, even if Roden could
be viewed as present at, but not directly involved in, Baird's search of Plaintiffs' vehicle, the
Court has ruled that the search was lawful, requiring dismissal of Plaintiffs' failure to intervene
claim.

Although Roden was not present in the bathroom with McVea when Hardy was searched,
there is some evidence in the record suggesting that he was in close enough proximity to the
bathroom to receive a report from McVea about what she observed during the search.  (*See*
Roden Decl. ¶ 17.)  This stands in contrast to McVea's contention that she spoke only to Baird
and Cirigliano upon completing the search, (McVea Decl. ¶ 6), but it is not the Court's duty to
reconcile these potentially conflicting facts on a motion for summary judgment.  Having already
denied Defendants summary judgment with respect to the search, the jury will have the
opportunity to decide whether Roden failed to intervene with respect to the alleged violation.

Roden was not involved in the preparation of the warrant authorizing a cavity search of
Hardy at the hospital, and therefore cannot be held liable for failing to intervene.  (Pls.' 56.1 ¶
33.)  Roden was, however, present at the hospital when the actual cavity search of Hardy
occurred, permitting that basis for the claim to survive.

With respect to Roden's failure to intervene to stop Hardy's purportedly wrongful arrest, the Court has already found that Hardy's arrest and subsequent prosecution were lawful and supported by probable cause.  Thus, Plaintiffs cannot maintain a failure to intervene claim based on her arrest.

Defendants have not, however, moved for summary judgment on the portion of Plaintiffs' claims arising out of Baird's pat downs of Hardy.  Roden was present at the time Baird asked Hardy to exit the vehicle and frisked her.  The questions of whether the frisk was lawful, and whether Roden failed to intervene if it was not, are therefore left for the jury.

### B.    *Trooper Baird*

For the same reasons just discussed with respect to Roden, Plaintiffs cannot maintain a claim for failure to intervene against Baird arising out of the search of Plaintiffs' vehicle or the strip and visual cavity search of McKoy.  Nor can Plaintiffs assert a claim against Baird with respect to Roden asking McKoy to defecate in front of him, as Plaintiffs cite no evidence in the record showing that Baird was present when the request was purportedly made.  Without personal involvement in the alleged violation, Baird cannot be found liable for failing to intervene.

Although Baird was not present in the bathroom with McVea when Hardy was searched, there is some evidence in the record suggesting that he was waiting near the bathroom for the results of the search.  (*See* Pls.' 56.1 ¶ 28.)  Having already denied Defendants summary judgment with respect to the search, the jury will have the opportunity to decide whether Baird failed to intervene with respect to the alleged violation.

Finally, Baird conducted the frisk of Hardy and drafted the warrant to search her at the hospital.  Thus, Baird's direct involvement in these alleged violations renders any claim that he failed to intervene unavailing.

C.      *Trooper McVea*

It is undisputed that McVea was not present during: (1) the stop and search of Plaintiffs'

vehicle; (2) the search of Hardy immediately after she exited Plaintiffs' vehicle; (3) Hardy's

arrest; and (4) the strip search of McKoy.  (Pls.' 56.1 ¶¶ 19, 21.)  Thus, McVea cannot be found

liable for failing to intervene with respect to these alleged violations.

McVea conducted the strip search of Hardy at the barracks.  Her direct involvement in

the search requires dismissal of any related failure to intervene claims.

McVea was, however, present when the search warrant was being drafted and when the

actual cavity search of Hardy occurred at the hospital.  (McVea Decl. ¶¶ 9-12.)  Having already

denied Defendants summary judgment with respect to this search, the jury may consider whether

McVea failed to intervene with respect to the alleged violations.

D.      *Investigator Cirigliano*

Like McVea, it is undisputed that Cirigliano was not present during: (1) the stop and

search of Plaintiffs' vehicle; (2) the search of Hardy immediately after she exited Plaintiffs'

vehicle; (3) Hardy's arrest; and (4) the strip search of McKoy.  (Pls.' 56.1 ¶¶ 19, 21.)  Thus,

Cirigliano, like McVea, cannot be found liable for failing to intervene with respect to these

alleged violations.

There is, however, some evidence to suggest that Cirigliano was waiting near the

bathroom for the results of Hardy's strip search, and that he was present for some portion of the

time that the search warrant was being drafted.  (*See* Pls.' 56.1 ¶ 28; Declaration of Peter

Cirigliano II ("Cirigliano Decl."), Docket No. 45, ¶¶ 8-11.)  Having already denied Defendants

summary judgment with respect to these searches, the jury will have the opportunity to decide

whether Cirigliano failed to intervene with respect to the alleged violations.

**VII.     Conspiracy**

Plaintiffs' final cause of action alleges a conspiracy to violate their civil rights under 42

U.S.C. § 1983.  Specifically, Plaintiffs allege that Defendants conspired to: (1) "fabricate legal

justification for the strip and visual cavity searches of both Plaintiffs"; (2) "intentionally compel

Plaintiff Hardy to urinate and Plaintiff McKoy to defecate in front of the officers"; (3) "fabricate

evidence to the magistrate in order to secure a warrant to search Ms. Hardy's bodily cavities";

(4) "falsely arrest, imprison, and maliciously prosecute Plaintiff Diana Hardy"; and (5) "fabricate

evidence and otherwise engage in a malicious abuse of process against the Plaintiffs."  (AC ¶

224.)

To succeed on a conspiracy claim under § 1983, a plaintiff must demonstrate: "(1) an

agreement between two or more state actors or between a state actor and a private entity; (2) to

act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that

goal causing damages."  *Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir. 1999).  "Accordingly,

to succeed in a § 1983 conspiracy claim, a plaintiff must prove not only a conspiracy, but an

*actual deprivation* of a constitutional right."  *D'Angelo-Fenton v. Town of Carmel*, 470 F. Supp.

2d 387, 397 (S.D.N.Y. 2007) (emphasis in original) (internal citations omitted).  A conspiracy

claim fails, however, where allegations are conclusory.  *Id.*; *Paige v. City of N.Y. Corr. Dep't*,

798 F. Supp. 2d 508, 510 (S.D.N.Y. 2011).

Furthermore, "[u]nder the 'intracorporate conspiracy doctrine,' the officers, agents, and

employees of a single corporate entity, each acting within the scope of [his or] her employment,

are legally incapable of conspiring together."  *Little v. City of New York*, 487 F. Supp. 2d 426,

441-42 (S.D.N.Y. 2007) (internal citations omitted); *see also Herrmann v. Moore*, 576 F.2d 453,

459 (2d Cir. 1978) (acknowledging, where trustees and faculty of educational corporation acted

in their official capacities to terminate professor's employment, that "there is no conspiracy if the

conspiratorial conduct challenged is essentially a single act by a single corporation acting exclusively through its own directors, officers, and employees, each acting within the scope of his employment"); *Paige*, 798 F. Supp. 2d at 510 (citing *Pangburn*, 200 F.3d at 72) (holding that conspiracy claim failed where it involved "only City Defendants who, as agents of the same municipal entity, cannot conspire among themselves.").

As an initial matter, the Court has already granted Defendants summary judgment on Plaintiffs' false arrest, malicious prosecution, and malicious abuse of process claims.  Without an actual deprivation of a constitutional right, Plaintiffs may not sustain a conspiracy claim on those causes of action.

With respect to the remaining conspiracy allegations, the Court finds that they are conclusory and unsupported by evidence in the record.  In opposition to the instant motion, Plaintiffs assert that Defendants "agreed to advance a false 'excessive lubricant' narrative (among others) to the magistrate" in order to secure a warrant for Hardy's cavity search.  (Pls.' Opp. at 30.)  More specifically, Baird and Cirigliano purportedly waited for McVea to deliver the "findings" from her strip search of Hardy, so that they could "discuss, or otherwise conspire" about the findings.  (Pls.' Opp. at 8.)[11]  Plaintiffs otherwise fail to address the remaining conspiracy claims – that Defendants conspired to fabricate legal justification for the strip and visual cavity searches of Plaintiffs or compelled Plaintiffs to urinate or defecate in front of Defendants.

Even accepting as true Plaintiffs' interpretations of McVea's testimony concerning her observations of Hardy's sweatpants and vaginal secretions, (*see* Pls.' Opp. at 7-8) (stating her

---

[11] In their opposition to the instant motion, Plaintiffs only assert one additional argument with respect to the conspiracy claim, detailing a conspiracy with respect to Hardy's purportedly false arrest.  (Pls.' Opp. at 32.)  Having already dismissed Hardy's false arrest claim, the Court need not reach this argument.

testimony was, at best, equivocal), as well as their proffered evidence that Baird and Cirigliano were awaiting McVea's findings following her strip search of Hardy, Plaintiffs cite no evidence demonstrating, or even suggesting, that any of the Defendants reached an agreement to advance a false narrative to the magistrate in support of their warrant application.  And, to the extent two or more of the Defendants did reach such an agreement, the intra-corporate conspiracy doctrine bars Plaintiffs from asserting a conspiracy claim against Defendants, as they were all employed by the same state agency – the New York State Police.  (Pls.' 56.1 ¶¶ 1-4.)  *Paige*, 798 F. Supp. 2d at 510; *Little*, 487 F. Supp. 2d at 441-42.  Accordingly, Defendants are entitled to summary judgment on Plaintiffs' conspiracy claims.

## VIII.   Qualified Immunity

Defendants seek qualified immunity on all of Plaintiffs' claims.  "Qualified immunity shields law enforcement officers from § 1983 claims for money damages provided that their conduct does not violate clearly established constitutional rights of which a reasonable person would have been aware."  *Zalaski v. City of Hartford*, 723 F.3d 382, 388 (2d Cir. 2013).  *See also Ashcroft v. al-Kidd*, 563 U.S. 731 (2011), *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) ("[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.").  The Court utilizes a two prong test when assessing a qualified immunity defense: (1) did the official violate a statutory or constitutional right?; and (2) was the right "clearly established" at the time of the challenged conduct?  *Id.*  It is within the Court's discretion to determine the order in which the two prongs are analyzed.  *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).  Simply put, "[a]s a general rule, police officers are entitled to qualified immunity if (1) their conduct does not violate clearly established constitutional rights, or (2) it was objectively reasonable for them to

believe their acts did not violate those rights." *Oliveira v. Mayer*, 23 F.3d 642, 648 (2d Cir. 1994).

    With respect to the claims on which Defendants have been granted summary judgment – the search of Plaintiffs' vehicle, false arrest, malicious prosecution, malicious abuse of process, conspiracy, and certain of the failure to intervene claims – Plaintiffs have not demonstrated the violation of a statutory or constitutional right.  Accordingly, the Court need not reach Defendants' qualified immunity defense on these claims.

    With respect to remaining claims – searches of Plaintiffs' persons and certain of the failure to intervene claims – questions of material fact predominate such that the Court is not presently equipped to determine whether Defendants would be entitled to qualified immunity on these claims.  (*See* Sections I and VI, *supra*.)  "Although a conclusion that the defendant official's conduct was objectively reasonable as a matter of law may be appropriate where there is no dispute as to the material historical facts, if there is such a dispute, the factual questions must be resolved by the factfinder."  *Kerman v. City of New York*, 374 F.3d 93, 108-09 (2d Cir. 2004) (internal citations omitted).  "After receiving *the jury['s] ... deci[sion as to] what the facts were* that the officer faced or perceived, the court then may make the ultimate legal determination of whether qualified immunity attaches *on those facts.*"  *Id.* (citing *Stephenson v. Doe,* 332 F.3d 68, 81 (2d Cir. 2003)) (internal quotation marks omitted) (emphasis in original). Accordingly, Defendants may renew their request for qualified immunity at the appropriate time following trial.

## CONCLUSION

    For the foregoing reasons, Defendants' motion for summary judgment is GRANTED in part and DENIED in part.  The following claims survive summary judgment:

- Cause of Action No. 1 – unlawful searches of Plaintiff McKoy by Defendants Roden and Baird, as well as of Plaintiff Hardy by Defendant McVea; and

- Cause of Action No. 6 – failure to intervene claims against: Defendant Roden with respect to the pat downs of Hardy conducted after the stop of Plaintiffs' vehicle, the strip search of Hardy conducted at the Monroe barracks, and the cavity search of Hardy performed at the hospital; Defendant Baird with respect to the strip search of Hardy conducted at the Monroe barracks; Defendant McVea with respect to the drafting of the search warrant and the cavity search of Hardy performed at the hospital; and Defendant Cirigliano with respect to the drafting of the search warrant and the strip search of Hardy conducted at the Monroe barracks.

The Court respectfully directs the Clerk to terminate the motion at ECF No. 40. The parties are directed to appear for an in-person pretrial conference at 2:15 p.m. on June 3, 2016.

Dated:   May 10, 2016
         White Plains, New York

SO ORDERED:

_____
NELSON S. ROMÁN
United States District Judge